UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| VICKIE COCKRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:17-cv-00333-LSC |
| | ) | |
| GREENE COUNTY HOSPITAL | ) | |
| BOARD, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

Before the Court are Defendant Greene County Hospital Board's ("GCHB") Fed. R. Civ. P. 56 motion for summary judgment on all claims (doc. 28), and Defendant Elmore Patterson's ("Patterson") motion for summary judgment on all claims (doc. 30). The issues have been fully briefed and are ripe for review. For the reasons set out below, **GCHB's motion is due to be GRANTED, and Patterson's motion is due to be** GRANTED also.

I.     BACKGROUND[1]

--------

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386,

The GCHB operates a hospital, physician clinic, and residential care facility in Eutaw, Alabama. Patterson, a male, was the Chief Executive Officer ("CEO") of GCHB at all times relevant to this case. In May 2013, Plaintiff began her employment with GCHB as a part-time administrative clerk in the residential care facility. In January 2014, Patterson promoted Plaintiff to a full-time position as GCHB's Human Resources ("HR") Coordinator. In that role, her "duties included orienting new employees, coordinating the completion of paperwork (including payroll tax forms) by new employees, training employees on labor and employment law, maintaining employee records, and creating job descriptions." (Doc. 27 at 3.) Plaintiff would review the employee handbook, which contains an anti-harassment policy[2] that provides a reporting procedure for reporting incidents of alleged harassment or discrimination, with new hires during employee

1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotes omitted).

[2] *See* GCH Employee Handbook, Doc. 32-2 at 160 ("If you experience or witness sexual or other unlawful harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Administrator or any other member of management. You can raise concerns and make reports without fear of reprisal or retaliation.").

orientation. After being placed in the HR Coordinator position, Plaintiff moved to work in the GCHB business office. Other than Patterson, all employees stationed to work in the business office were female. While serving as HR Coordinator, Plaintiff was assigned additional duties as an administrative clerk in the residential care facility in August 2015 and received additional compensation—her salary was increased from $12.60/hour to $13.60/hour. At that time, her duty station was moved from the business office to the residential care facility. A few months later, on October 6, 2015, Plaintiff lodged a written complaint via letter which states in pertinent part: **"I am consistently thrown into numerous situations by Mr. Elmore** Patterson, CEO which cause me to feel harassed, stressed, and targeted for no reason. I have verbally reported the feelings/concerns of his direct harassment to **my direct supervisors in the past."** (Doc. 32-2 at 166.)[3] The evidence Plaintiff provides of other complaints lodged with either her supervisor JoAnne Cameron **("Cameron") or Patterson** is her own testimony and the testimony of Pinnia Hines, the Assistant Director of Nursing. Specifically, Cockrell claims that she

---

[3] Cameron and the other alleged recipients of the October 6, 2015 complaint denied receiving it and signed a document testifying to that effect. (*See* Doc. 32-1 at 17.)

complained to Cameron;[4] fellow employees, Tiffany Grisby, Sandra Root, Tonya Williams, and Pinnia Hines (**"Hines"**); and former or current board members Charles Robertson (**"Robertson"**), Ralph Banks, Loretta Webb, and Sue Vance (**"Vance"**). (Pl. Dep. at 146, 164, 174, 184-87; Hines Dep. at 22- 23; Robertson Dep. at 22, 68.) Other female employees had also submitted various complaints to **the Board members regarding Patterson's conduct**. (*See* Vance Dep. at 33; Robertson Dep. at 50-52.)

Then on October 7, 2015, Plaintiff**'s counsel** sent a letter to Patterson and Vance, then Chairperson of GCHB, stating that he represented Plaintiff with respect to the terms and conditions of her employment. The letter referred **generally to "deteriorating working conditions" and "discrimination and harassment"** by Patterson and others within management, but made no mention of the alleged discrimination being based on a protected characteristic such as gender or religion. (Doc. 32-1 at 19-20.) On November 16, 2015, Vance sent a letter to **Plaintiff reinforcing GCHB's policy against discrimina**tion and retaliation in the

---

[4] Cameron denies any instance of Plaintiff ever lodging a complaint with her regarding Patterson's conduct. (*See* Doc. 32-3, Cameron Dep. at 10) (Q: "Did Ms. Cockrell ever complain to you about Mr. Patterson's behavior in the work place?" A: "Not to me."))

workplace and requesting she provide the specifics of her claims in writing to Board Member Fred Hughes (**"Hughes"**) to enable GCHB to investigate and take appropriate remedial action if necessary. Vance also directed Plaintiff to report any complaints **regarding conduct in violation of GCHB's policy against harassment,** discrimination, and retaliation directly to Hughes, or in the alternative, to her. Plaintiff did not lodge any complaints with Hughes.

Three days later, on November 19, 2015, the management of GCHB received a report from Shelia Henderson (**"Henderson"**), the Payroll/Registration Supervisor, that there appeared to be an invalid signature on the A-4 state tax form of Cand**ace Brock ("Ms. Brock"), a** newly-hired employee. The signature on the **A-4 form appears to be distinct from Ms. Brock's signature on the other new hire** forms. (*See* Doc. 32-1 at 24-26, 28-29.) Ms. Brock verified that she did not sign the form and that the signature on the form was not hers. She also indicated that she did not authorize Plaintiff, or anyone else, to sign the document on her behalf. Based on the nature of their duties, Plaintiff, Cameron and Henderson would have all had access to the allegedly forged document. When asked, Plaintiff denied forging the signature on the tax form. On December 3, 2015, Plaintiff was **terminated from GCHB's employ** by Cameron. The termination notice states she

was being terminated based on GCHB's good faith belief that she forged an employee's signature on a tax form and amidst concerns regarding her job performance as a result of the forgery. **Following her termination, Plaintiff's** position was filled by another female employee. A few days later, Plaintiff filed her Charge of Discrimination with the EEOC, which is dated December 10, 2015.

Cameron also testified that she was suspicious of Plaintiff given other incidents of questionable conduct. (Doc. 39-10, Cameron Dep. at 23-24.) After leaving her position at the nursing home and becoming HR Coordinator, Plaintiff **would directly enter her hours into GCHB's computer system,** instead of clocking **in and out** "which [in Cameron's perspective] **was just kind of deceptive.**" (*Id.* at 25-27.) Cameron also testified that **Weenoa Peebles, Patterson's Executive** Assistant, reported that Plaintiff would leave confidential information displayed on her computer screen at work and would let other employees gather around her desk to view it. (*Id.* at 28.) This is explicitly listed as unacceptable behavior in the Employee Handbook. (*See* Doc. 32-2 at 158.) Finally, Cameron also testified that she discovered Plaintiff was receiving family coverage from Blue Cross/Blue Shield **("BCBS") even though the premium for family coverage was not being deducted** from her pay and that her husband used it during that time. (Doc. 32-3 at 43, 52-

53.) As the HR Coordinator, Plaintiff would review GCHB's monthly BCBS bill, add new employees and remove terminated employees from the coverage list, and notify BCBS of those changes. (*Id.* at 43.) Given that Plaintiff reconciled the BCBS bill, Cameron suspected that Plaintiff knew she was receiving family coverage without being charged for it.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[5] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but determine whether there

---

[5] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015); *see also Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013).

are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, the

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

### A. **GCHB'**S MOTION FOR SUMMARY JUDGMENT

#### 1) Sexually hostile work environment pursuant to Title VII

Plaintiff's first claim is that Patterson created a sexually hostile work environment in violation of Title VII.[6] As *Reeves v. C.H. Robinson Worldwide, Inc.* sets forth,

> [t]he legal standard for hostile work environment claims in this Circuit is well-settled. To prove a hostile work environment, the plaintiff must show [:]
>
>> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive

---

[6] Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S. C. § 2000e-2[a][1].

working environment; and (5) a basis for holding the employer liable.

594 F.3d 798, 808 (11th Cir. 2010) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc), *cert. denied*, 529 U.S. 1068 (2000). GCHB contends that the alleged conduct was not severe or pervasive enough to alter the terms and conditions of employment amounting to a cognizable sexual harassment claim. To satisfy the fourth element of her sexual harassment claim, Plaintiff must present evidence that is subjectively and objectively[7] severe or pervasive. *Mendoza*, 195 F.3d at 1246. Plaintiff herself must "subjectively perceive" the environment to be abusive and the harassing behavior must also render the work environment "one that a reasonable person would find hostile or abusive." *Id.* at 1245 (quoting *Harris*, 510 U.S. at 21-22). When **"evaluating the objective se**verity of the harassment, this [C]ourt looks at the totality of the circumstances and considers, among other **things: '(1) the frequency of the conduct; (2) the** severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive

_____

[7] "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (quoting *Miller*, 277 F.3d at 1276).

The parties do not dispute that Plaintiff belongs to a protected group as a woman. The evidence[8] Plaintiff submitted to support her sexually hostile work environment claim, all of which allegedly occurred over a two-and-a-half-year period between May 2013 and December 2015 while Plaintiff worked in the business office, is as follows:

> Three to four occasions when Patterson allegedly made a comment regarding the size of a **particular nurse's behind. (Pl.** Dep. at 75-76.)
>
> One occasion when Patterson allegedly made a comment inquiring if a **female employee's pubic hair was the same color as the hair on her head. (***Id.* at 82-85.)
>
> Two to four occasions when **Patterson allegedly said "let me look at this picture" in reference to a female employee's computer screen saver, which** was a photo of the employee from the waist up allegedly wearing only her bra. (*Id.* at 82-83, 110-12.)

---

[8] The Court has listed only those instances which Plaintiff testified she witnessed personally. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) (Affirming district court's decision to "limit[] its consideration to incidents of [] harassment of which the individual employees were aware." Noting that "[t]he totality of a plaintiff's workplace circumstances does not include other employees' experiences of which the plaintiff is unaware.").

One occasion when **Patterson allegedly made a comment about a "passion mark" (or "hickey") on an employee's neck and said "you must have been busy last night."** (*Id.* at 87-88.)

One occasion when Patterson allegedly, while participating in a group conversation, **asked the employees in the business office what "comfort clothes" they changed into** after work. (*Id.* at 95-98.)

Two to three occasions when Patterson allegedly made some sort of **comment suggesting that he liked "dark-skinned" women**, especially those with big hips. (*Id.* at 113-15.)

One occasion when Patterson allegedly told a female employee that she needed to get her hair fixed because it looked **"butch"** and needed to be **"more feminine-like."** (*Id.* at 114, 273-74.)

Three occasions when Patterson allegedly cited a scripture from the Bible suggesting that men are superior to women. (*Id.* at 118, 131-32.)

One occasion when **Patterson allegedly said that a female employee's brain** was not big enough to **"fit up a gnat's behind."** (*Id.* at 271.)

One occasion when Patterson allegedly asked the female Director of Nursing, **"Where did you get your nursing license from, out of a Cracker Jack box?"** (*Id.* at 275.)

One occasion, when, during a conversation on **Plaintiff**'s birthday about a car she liked at a local car dealership, Patterson allegedly said that all he had to do was give her the money for the down payment on the car and he could take her from her husband. (*Id.* at 277-78.)

One occasion when Patterson allegedly questioned one of Plaintiff's female co-workers' intelligence by saying **"You're so dumb. Who gave you this position?"** (*Id.* at 275.)

(Doc. 36 at 20-21 n.9; Doc. 29 at 12-13.) Plaintiff also testified that Patterson had a way of intimidating those around him, and that he disciplined female workers in a different manner than he did male workers.[9] Additionally, Plaintiff testified that Patterson often made suggestions that women are inferior to men and should be submissive. (Pl. Dep. at 118.) In his deposition, Patterson admitted to yelling and using profanity in the presence of employees. (Doc. 32-8, Patterson Dep. at 65.) Vera Rice ("Rice") and Wennoa Peebles ("Peebles") testified that Patterson also made demeaning and belittling comments towards Plaintiff and women, in general. (Rice Dep. at 17, Peebles Affidavit at 2-3.)

"It is a bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012). "Therefore, only conduct that is based on a protected category . . . may be considered in a hostile work environment analysis." *Id.* (emphasis added) (quotation marks omitted); *see also Reeves*, 594 F.3d at 809 n.3 ("[T]he Courts of Appeals have uniformly observed that Title VII is not a civility

---

[9] Plaintiff testified that the two men she witnessed Patterson disciplining both belonged to the union. As such, they are subject to a specific disciplinary structure, which includes having their supervisor or another person present when receiving discipline. Employees in the business office, including Plaintiff, were not union members. (Pl. Dep. 122-24.)

code, and that harassment must discriminate on the basis of a protected characteristic in order to be actionable.") (citations omitted). Some[10] of the comments alleged by Plaintiff do not have a sexual or gender-related connotation and cannot be used to support a sexual harassment claim. *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (comments that are offensive and belitting, but not based on a protected category, cannot be used to establish hostile work environment claim); *see also Jones*, 683 F.3d at 1297 ("Innocuous statement or conduct, or boorish ones that do not relate to the [sex or gender] of the actor or the offended party (the plaintiff), are not counted.").

Even if considered in conjunction with the testimony of other witnesses,[11] Cockrell's allegations simply do not rise to the level of severe or pervasive sufficient to sustain a sexually hostile work environment claim as established by

---

[10] The gnat comment and the cracker-jack box comments do not have a sexual or gender-based connotation. (Pl. Dep. at 171, 175.)

[11] Plaintiff also proffered testimony of other witnesses showing that: Patterson called a female employee a "trifling ho," he has a habit of "talking to women as if they're nothing," referred to women as being backwards and ignorant, commented that many of the employees "dressed like hoes" (Marilyn Atkins ("Atkins") Dep. at 153-55, 166-69, 180-81); that he would show photographs of half-naked women, told the women that they needed to have a man over them as a department head, and made comments about the women's legs, bosoms and behinds. (Wennoa Peebles ("Peebles") Dep. 97, 120-22, 159-60.)

case law[12] in this Circuit. *See e.g. Mendoza*, 195 F.3d at 1247-48 (holding that "conduct alleged by [plaintiff] [fell] well short of the level of either severe or pervasive conduct sufficient to alter [her] terms or conditions of employment" where supervisor **told plaintiff, "I'm getting fired up,"** rubbed his hip against hers while touching her shoulder and smiling at her, made sniffing noises while staring at her groin, and constantly followed and stared at her for eleven months).

Applying the four factors above, Plaintiff has failed to show the alleged harassment was objectively severe or pervasive enough to support a Title VII claim.

------------------------------------------------------------

[12] *See, e.g., Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807 (11th Cir. 2012) (conduct of co-worker grabbing plaintiff's butt two to five times; "talk[ing] dirty" to her, saying that he would perform certain sexual acts on her, among other lewd comments, held to not reach severe level); *Leeth v. Tyson Foods, Inc.*, 449 F. App'x 849, 853 (11th Cir. 2011) (finding conduct not sufficiently severe or pervasive where manager tried to pull plaintiff onto his lap, made comments that he wanted to "ram his tongue down her throat," dropped by her house uninvited, and called her on phone on numerous occasions and asked plaintiff to go out with him or meet him at hotel); *Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 863 (11th Cir. 2009) (per curiam) (affirming district court's finding that no genuine issue of material fact on hostile work environment claim existed despite evidence of co-worker's talking about sexual positions, telling plaintiff he would perform certain sexual acts on her, that her boyfriend "ain't F'ing [her] right," and that she needed "to get with a real guy," as well as touching her bottom); *Howard v. City of Robertsdale*, 168 F. App'x 883, 885, 889-90 (11th Cir. 2006) (holding supervisor's comments about employees' bodies and sex lives, and sexual jokes made on regular basis, not objectively severe); *cf. Reeves*, 594 F.3d at 812 (evidence presented that employer's offensive conduct occurred "every single day," and consisted of various vulgar sexual conversations, many derogatory remarks directed towards women in particular, and the presence of pornography in the workplace was sufficient to meet the pervasiveness requirement and allowed claim to proceed to a jury).

Plaintiff averred that Patterson's conduct "impaired her work performance and deterred other employees from filing EEOC charges or speaking up." (Doc. 36 at 26.) However, upon consideration of the record evidence, the Court finds that Patterson's conduct did not sufficiently interfere with or alter the terms of Plaintiff's employment—especially given that she continued to work until she was fired. While Plaintiff alleges that she packed up her desk because she "felt like [she] couldn't take it anymore," Plaintiff testified in her deposition that the incident was on account of Peebles and Henderson making jokes across the room from each other, conversations that Patterson would allegedly encourage. In response, Patterson joked with Plaintiff, saying, 'Oh, my goodness, it's really clean over here. What you doing, planning on leaving us?'" The Court finds that neither this incident nor the other types of treatment averred by Plaintiff is sufficient for a finding that the terms or conditions of Plaintiff's employment were altered.

In sum, though unprofessional, Patterson's conduct and comments were not "filled with intimidation[13] and ridicule that was sufficiently severe or pervasive to

---

[13] Plaintiff proffered deposition testimony to show that Patterson acted in an intimidating manner such that employees, including Plaintiff, were fearful of losing their jobs. (*See* Rice Dep. at 23-24 (Q: Have you ever seen or witnessed what you felt or believed was retaliation by Mr. Patterson

alter [Plaintiff's] working **conditions.**" *Gowski,* 682 F.3d at 1313. As such, **summary judgment is due to be granted in GCHB's favor on Plaintiff's** Title VII hostile work environment claim.

2) Title VII Sexual harassment/gender discrimination claim

**Plaintiff's gender discrimination claim is based on the same allegations as her** sexually hostile work environment claim. GCHB avers, and Plaintiff does not contest, that **Plaintiff's gender discrimination claim is duplicative of her sexually** hostile work environment claim. "**[T]he onus is upon the parties to formulate arguments,**" *Resolution Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *see also U.S. Steel Corp. v. Astrue,* 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) **(citations omitted) (declining to consider a party's underdeveloped argument).** In her Response, Plaintiff sets **forth that her claim of gender discrimination is "based on the creation of a sexually harassing hostile work environment.**" (Doc. 36 at 27.) Because "**sexual harassment is a form of sex discrimination prohibited by Title**

---

for people making complaints about him? A: In my opinion, yes. Q: Can you give me examples of those? A: People that were terminated and the fact they tried to stand up for themselves. . . Q: You think those terminations had a chilling effect in the work place as to people being willing to bring their complaints? Q: Yes.)) (*See also* Pl. Dep. at 270 ("I have my hit list together. Either you're on the Patterson team or you're gonna have to be out of here.").)

VII[,]" Plaintiff's gender discrimination claim is duplicative of her sexually hostile work environment claim. *Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1026 (11th Cir. 2008) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Consequently, it fails for the same reasons detailed above.

### 3) Title VII Religious hostile work environment claim

The parties agree that the standard for a showing of discrimination is the same for both sexual and religious hostile work environment claims. (*See* Doc. 36 at 27 (citing Doc. 29 at n.6)). In order "[t]o establish a *prima facie* Title VII claim for hostile work environment based on religious harassment, a plaintiff must establish: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment was based on [her] religion; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Lara v. Raytheon*

*Tech. Serv. Co., LLC*, 476 F. App'x 218, 220-21 (11th Cir. 2012) (per curiam) (unpublished)[14] (citing *Mendoza*, 195 F.3d at 1245)).

Plaintiff alleged the following incidents of misconduct to support her religious harassment claim: two or three occasions when Patterson jokingly referred to her **as a "first lady" (i.e., a pastor's wife)** (Doc. 32-3, Pl. Dep. at 145-48); two or three occasions when Patterson joked about how long Baptist[15] preachers would conduct church services (*id.* at 148); and one occasion when Patterson joked that Baptist **preachers collect "good money on Sundays"** and asked Plaintiff if she brought him anything out of the collection plate (*id.* at 144-49). Even when considered in a light most favorable to her, the facts asserted by Plaintiff do not rise to the level of severe or pervasive harassment on account of the fact that she is a Christian Baptist.

The Eleventh Circuit has held significantly more egregious conduct insufficient to establish a religiously hostile work environment claim. *See, e.g.,* *MackMuhammad v. Cagle's*, 379 F. App'x 801, 805 (11th Cir. 2010) (per curiam)

---

[14] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[15] Plaintiff alleged Patterson implied he was superior because of his Catholic faith. (Doc. 1 at 4.)

(holding that a Muslim employee was not subjected to religious harassment when his **manager referred to him as "Bin Laden" or "Muhammad-man" over company** radio and intercom, and supervisors asked him about his religion and made comments about his dietary restrictions, because such comments were at most insensitive and rude, and did not amount to severe or pervasive harassment that is "actionable under Title VII"); *Alansari v. Tropic Star Seafood, Inc.*, **388 F. App'x** 902, 905 (11th Cir. 2010) (finding comments that included solicitations to go to church **because "Jesus would save him, [and]** other comments about [plaintiff's] Muslim religion, and the playing of Christian music on the radio-may have been unwanted and even derogatory, but [] did not rise to a threatening or humiliating level"); *Richardson v. Dougherty Cty., Ga.*, **185 F. App'x** 785, 790-91 (11th Cir. 2006) (rejecting Title VII hostile work environment claim where supervisor **referred to plaintiff more than fifty times as "preacher man" and made comments** about his religion and request for accommodation); *Jones v. United Space Alliance*, **170 F. App'x** 52, 55-56 (11th Cir. 2006) (dismissing religious hostile work environment claim where complained-of conduct including a manager telling plaintiff **to remove lanyard with name "Jesus" on it,** "not to leave his Bible on his desk" and "to turn down religious music" **deemed to be not severe or** pervasive).

Plaintiff has not established that the alleged conduct rises to the level of severe or pervasive harassment. Accordingly, summary judgment is due to be granted on Plaintiff's Title VII religious hostile work environment claim as to GCHB.

### 4) Title VII retaliatory discharge claim

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing her *prima facie* case. To make out a *prima facie* case of retaliation, a plaintiff must "prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.* 513 F.3d 1261, 1277 (11th Cir. 2008).

Once the plaintiff has demonstrated her prima facie case, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is

produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

### i. Prima Facie Case

There is no dispute that Plaintiff suffered a materially adverse employment action—she was terminated. Consequently, the two prongs Plaintiff must establish are that she engaged in statutorily protected activity and there was a causal connection between that activity and her termination. GCHB cites *Jeronimus v. Polk Cty. Opportunity Council, Inc.*, in which the Eleventh Circuit held that a complaint "of being 'singled out,' and subjected to 'a campaign of harassment,' and working in a 'hostile environment' . . . did not amount to protected conduct" where it was "never suggested that this treatment was in any way related to [the plaintiff's] race or sex" to argue that Plaintiff cannot establish her *prima facie* case because there is no evidence that she engaged in protected conduct in close temporal proximity to her termination. 145 F. App'x 319, 326 (11th Cir. 2005). Similarly, Plaintiff's October 6th written complaint,[16] and her lawyer's October 7th

---

[16] (*See* Doc. 32-2 at 166.)

letter[17] to GCHB make no reference to any protected category. Plaintiff alleges that she made complaints to other people[18] at various times during her employment. In her deposition testimony, Plaintiff testified that she lodged complaints with both Cameron and Patterson—showing protected activity.[19] However, she does not proffer sufficient evidence showing those complaints were close in proximity to her termination. As such, Plaintiff cannot prove her retaliation claim.

To "establish the causal link required as part of her *prima facie* case, [the plaintiff] need only establish that the protected activity and the adverse action were not wholly unrelated." *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (internal quotations omitted)). A plaintiff can meet this element by offering "sufficient

---

[17] While Plaintiff's counsel's letter explains Plaintiff has "experienced discrimination and retaliation at the hands of [GCHB's] CEO, Elmore Patterson[,]" it makes no mention that the alleged harassment was on account of Plaintiff's sex or religion (or any other protected category). (*See* Doc. 32-1 at 19-20.)

[18] Pinnia Hines, then Assistant Director of Nursing, testified that Cockrell confided in her about the way Patterson was treating her in the work place—specifically about how it bothered Plaintiff that Patterson "was referring to her as a preacher's wife." (Doc. 39-2, Hines Dep. at 22-24.)

[19] "In determining whether [a plaintiff's] conduct is protected under section 704(a), we recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors or who use their employers' internal grievance procedures. *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (citations omitted).

evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). The Eleventh Circuit has held "that a period as much as one month between the protected expression and the adverse action is not too protracted." *Hidgon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *but see Williams v. Waste Mgmt.*, 411 F. App'x 266, 230 (11th Cir. 2011) (finding two month gap between protected conduct and adverse employment action not "very close" and thus insufficient to prove causal connection). Here, Plaintiff sent the letter complaining of a hostile work environment on October 6th, her attorney sent a letter on October 7th, GCHB sent a response letter on November 16th, the report of the forgery occurred on November 19th, and Plaintiff was terminated December 3, 2015. Plaintiff concedes that "a three-month time lapse does not constitute close temporal proximity" but claims that the other evidence[20] produced tends to show

---

[20] The evidence consists of Cockrell's testimony that she voiced numerous complaints to other co-workers and board members, and the fact that Patterson had a habit of threatening to terminate female employees. Specifically, Cockrell alleges that she complained to her supervisor, Cameron; fellow employees, Tiffany Grisby, Sandra Root, Tonya Williams, and Pinnia Hines;

causation, **making the events rise to the level of being proximately "very close."** (Doc. 36 at 29-31) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). Even when viewed in a light most favorable to Plaintiff, the Court does not find that this other evidence creates the requisite causal connection.

### ii. *Legitimate Nondiscriminatory Reason & Pretext*

Assuming *arguendo* that Plaintiff made her *prima facie* case, the burden of production then shifts to GCHB to produce a legitimate, nondiscriminatory reason for firing her. **GCHB's burden here is "exceedingly light."** *Perryman v. Johnson Prods. Co., Inc.*, **698 F.2d 1138, 1142 (11th Cir. 1983). "At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'"** *Id.* (quoting *Lee v. Russell Cty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). Here, GCHB stated that Plaintiff was terminated upon a good faith belief that she forged another

---

and former or current board members Charles Robertson, Ralph Banks, Loretta Webb, and Sue Vance. (Pl. Dep. at 146, 164, 174, 184-87; Hines Dep. at 22- 23.)

employee's signature on an A4 tax return.[21] GCHB has thus met the burden of production.

The burden therefore shifts back to Plaintiff to show that **GCHB's** proffered reason is mere pretext for unlawful retaliation. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Pretext can be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Kragor*, 702 F.3d at 1310–11. Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

---

[21] Cameron also testified that there were numerous occasions of questionable and deceptive behavior by Plaintiff which bolstered her belief that Plaintiff did indeed forge the document. (*See supra* Section I. Background at 5-7.)

reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

To show pretext, Plaintiff first points to the allegedly suspicious[22] timing of her termination. **On October 7, 2015, Plaintiff's counsel sent a letter to GCHB after** Cockrell, Peebles, and Atkins had already submitted complaints to the Board **members regarding Patterson's conduct.** A month later, in the middle of November, GCHB sent a letter in response asking for more specifics regarding Plaintiff's claim.[23] Three business days later, Henderson submitted the notice documenting the discovered forgery. Upon her return from vacation, Plaintiff was fired, and she claims that she was not given an opportunity to defend herself. However, Cameron testified, and Plaintiff admitted, that they had at least one meeting regarding the forged document. (Cameron Dep. at 16-17, Pl. Dep. at 233.) Plaintiff also argues the fact that Cameron did not conduct a meaningful investigation to discover who else may have possibly forged the document shows

---

[22] However "[i]t is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate that there is a genuine issue of material fact that the employer's proffered reason for [the adverse employment action] was pretextual." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1278 (11th Cir. 2008) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

[23] (Doc. 32-1 at 22.)

pretext, citing the known issues between Plaintiff and Henderson.[24] (*See* Cameron Dep. at 19-21; Pl. Dep. 112-13.) Plaintiff proffered evidence that Cameron knew of the hostility between Plaintiff and Henderson—who discovered the forgery—in addition to the fact that both Cameron and Henderson would have also had access to the allegedly forged document based on the nature of their duties.

Regardless, the Court finds that the above-discussed evidence is not sufficient to show pretext **in light of GCHB's legitimate, credible reasons** for terminating Plaintiff none of which were for discriminatory reasons.[25] Thus, summary judgment on **Plaintiff's** Title VII retaliation claim is due to be granted.

5) State law claims

    i. *Outrage*

---

[24] Cameron knew that Plaintiff and Henderson did not get along. (Pl. Dep. at 112-13; Cameron Dep. at 28-30.) Henderson allegedly had to be pulled away from **Plaintiff's** desk a few times to avoid a physical altercation. (Pl. Dep. at 112.) On one of these occasions, Plaintiff informed Cameron **and Patterson, through email, of Henderson's aggression towards her. (Pl. Dep. at 112-13; January 6, 2014 email, Doc. 32-7.)**

[25] *See Flowers v. Troup Cty.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (citations and internal quotations omitted).

Under Alabama law, outrage is an "extremely limited cause of action" that applies to only three kinds of conduct: (1) wrongful conduct regarding burial matters; (2) barbaric methods used to coerce an insurance settlement; and (3) egregious sexual harassment. *Stancombe v. New Process Steel LP*, **652 F. App'x** 729, 740 (11th Cir. 2016) (citing *O'Rear v. B.H.*, 69 So. 3d 106, 118 (Ala. 2011) *abrogated on other grounds by Ex Parte Vanderwall*, 201 So. 3d 525 (Ala. 2015)). Indeed, "[t]he tort of outrage[26] **provides a remedy for 'extreme and outrageous conduct,'** and so should not be the basis for vicarious or *respondeat superior* liability except in the **most compelling circumstances."** *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 327 (Ala. 1989) (citing *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)). No such compelling circumstances exist on these facts, even when they are construed in a light most favorable to Plaintiff. As such, summary judgment is due **to be granted in GCHB's favor on the outrage claim.**

*ii. Negligent training, supervision, and retention*

In Alabama, in order to survive summary judgment on a claim for negligent or wanton supervision, Plaintiff must offer substantial evidence of three elements.

---

[26] *See infra*, Section B. at 31-32 (Discussing the tort of outrage in Alabama in more detail).

The first element requires a showing that Patterson committed a tort recognized under Alabama law. Second, Plaintiff must show that GCHB had either actual or constructive notice of Patterson's conduct. *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001). This second element can be shown either through knowledge of Patterson's incompetence or unfitness for the position. *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995); *see also Gilmer v. Crestview Mem. Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009) ("To prove a claim of negligent supervision, a plaintiff must show that the employer knew, or in the exercise of *ordinary care should have known*, that its employee was incompetent." (citing *Armstrong*, 817 So. 2d at 682) (emphasis added)). For the third and final element, Plaintiff must show that GCHB failed to adequately respond to the notice. *Armstrong*, 817 So. 2d at 682; *see also Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009).

The Alabama Supreme Court has stated, "[i]t is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury to determine whether they would have come to the master's knowledge had the master exercised ordinary care." *Mardis*, 669 So. 2d at 889. "An employer can be held directly liable for a supervisor's harassment

when the employer either intended, or negligently permitted, the tortious conduct to occur. The harassment can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action." *Dees v. Johnson Controls World Servs., Inc.*, 168 F. 3d 417, 421 (11th Cir. 1999); *see Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003) ("[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents.").

In her reply brief, Plaintiff alleges that she specifically complained to Cameron about "(1) Patterson's negative religious comments regarding her being a Baptist and a pastor's wife and (2) Patterson egging on the already tense hostile relationship between Shelia Henderson and [Plaintiff]." (Doc. 36 at 38.) These instances and others alleged by Plaintiff are not sufficiently frequent to show underlying wrongful conduct. Plaintiff provided other record evidence[27] to show

---

[27] Charles Robertson, who was a board member during the time of Plaintiff's employment with GCHB testified that Peebles, Atkins, and Cockrell all directly told him, on several occasions, that Patterson was disrespectful to women and that he used intimidation and bullying in the workplace. (Robertson Dep. at 32, 52 (Q: "Anybody else tell you that Mr. Patterson was disrespectful to women?" A: "I could say those [Atkins, Cockrell, and Peebles] particularly, but that is something that has echoed in the walls of the community, yes.")). Robertson testified that he spoke with Plaintiff in particular "two to three times." (*Id.* at 68.) Additionally, he believed there needed to be an objective investigation or hearing by GCHB regarding allegations

that GCHB either was on notice or could have known of Patterson's general incompetence, and failed to take remedial action. The Court finds that this evidence would allow Plaintiff to satisfy elements two and three required for negligent, hiring, supervision and retention: notice and failure to respond. However, Plaintiff has failed to demonstrate the first required element, which is a required tort. As referenced above and discussed in more detail below, Plaintiff has failed to present evidence sufficient to allow her outrage claim to proceed to a jury. Additionally, she has not averred any other specific Alabama tort or any allegations which would enable her to prove the underlying wrongful conduct of GCHB's agent (Patterson). Accordingly, summary judgment is appropriate for this claim and is due to be granted in GCHB's favor.

---

surrounding Patterson's inappropriate administration style in financial matters and his treatment of female employees. (*Id.* at 14-15, 33-36, 68-73.) He resigned because he was "so dissatisfied" with the lack of objectivity within GCHB. (*Id.* at 36.) Additionally, Vance, the chairwoman of GCHB, admitted to having received complaints from Peebles about Patterson's behavior and doing nothing in response, only telling Peebles to "keep her own notes." (Vance Dep. at 29-33.) Additionally, Pinnia Hines, who was a nurse until her retirement in February of 2015 and is now a GCHB board member testified that during Hines' employment, Peebles was upset to the point of being in tears because of Patterson's treatment. Hines also testified that when she became a board member, Henderson voiced complaints about Patterson—specifically that he had threatened to demote her and was treating her unfairly. Henderson sent Hines a letter, which she forwarded to the chairman of GCHB. (Hines Dep. at 28-30.)

## B. PATTERSON'S MOTION FOR SUMMARY JUDGMENT

In her response to Patterson's motion for summary judgment, Plaintiff "concedes that there is no individual liability against Patterson under Title VII" but holds to her claim that "summary judgment is not proper for the state law claims asserted against [him]." (Doc. 38 at 13.) As such, the Court will address the state law claims asserted against Patterson.

Plaintiff avers that "Patterson caused severe emotional distress when he sexually and religiously harassed Ms. Cockrell and is thus liable for the tort of outrage." (Doc. 38 at 13.) However, she has submitted no evidence showing the severity of her emotional distress—such as evidence of medical treatment or medication. (Pl. Dep. 241-245.) Such generalized testimony is not sufficient to show severe emotional distress. *See State Farm Auto. Ins. Co. v. Morris*, 612 So. 2d 440, 445 (Ala. 1993) (holding that evidence indicating that plaintiff suffered some emotional distress not sufficient). In Alabama, the torts of intentional infliction of emotional distress and outrage are synonymous. *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). To bring a successful action for outrage, a "plaintiff must prove (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no

reasonable person could be expected to endure it." *Id.* The tort is limited to particularly serious situations, including "egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). It does not permit actions for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities*." Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012).

Viewing the evidence in the light most favorable to the non-movant, Plaintiff fails to allege any conduct amounting to the severity necessary to establish a claim for outrage. Thus, summary judgment is due to be granted in Patterson's favor on this claim.

## IV.  CONCLUSION

For the reasons stated above, GCHB's motion is due to be GRANTED and Patterson's motion is due to be GRANTED. An Order consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DONE and ORDERED on April 4, 2018.

L. Scott Coogler
United States District Judge

190685